1
2
3
4
5
6
7

8            UNITED STATES DISTRICT COURT

9            EASTERN DISTRICT OF CALIFORNIA

10

11   THE NVME GROUP, INC. dba RGI            No. 2:23-cv-01453-TLN-CKD
     SPRAY BOOTH,
12                                           **ORDER**
                 Plaintiff,
13
          v.
14
     MICHAEL HALVERSON, et al.,
15
                 Defendants.
16

17

18        This matter is before the Court on Defendants Michael Halverson ("Halverson") and Fast

19   Rack Equipment, LLC's ("Fast Rack") (collectively, "Defendants") Motion to Dismiss.  (ECF

20   No. 17.)  Plaintiff The Nvme Group, Inc., dba RGI Spray Booth ("Plaintiff" or "RGI") filed an

21   opposition.  (ECF No. 22.)  Defendants filed a reply.  (ECF No. 24.)  For the reasons set forth

22   below, the Court GRANTS in part and DENIES in part Defendants' motion.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

                                                1

**I.     FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff manufactures spray booths throughout the United States.  (ECF No. 15 at ¶ 13.)  From automotive spray booths to large cargo booths, Plaintiff creates booth setups for small or large companies and carries a large array of spray booth products and accessories.  (*Id.*)  Plaintiff's products are distributed using authorized distributors.  (*Id.* at ¶ 14.)  Prospective distributors must complete a three-day onsite training process to understand Plaintiff's products, pricing, types of models, and different types of industries.  (*Id.* at ¶ 15.)  The training also provides knowledge of how the booths are assembled and shows prospective distributors how the equipment is designed and built to make it easy to install.  (*Id.*)

In 2019, Plaintiff's owner, Napoleon Garcia, first met Halverson, owner of Fast Rack, at a woodworking trade show.  (*Id.* at ¶ 18.)  When Garcia met Halverson, Defendants did not sell or fabricate spray booths.  (*Id.* at ¶ 19.)  Garcia and Halverson discussed an opportunity for Defendants to become an authorized distributor to sell Plaintiff's products.  (*Id.* at ¶ 20.)

On or about September 20, 2019, Halverson traveled to Plaintiff's facilities in Tracy, California, where Garcia and Halverson formed an agreement that would allow Halverson, personally and on behalf of Fast Rack, to serve as an authorized distributor of Plaintiff's products.  (*Id.* at ¶ 21.)  Thereafter, Halverson underwent a three-day onsite training at Plaintiff's facilities in Tracy.  (*Id.* at ¶ 23.)  During the training, Halverson learned about Plaintiff's products and had access to Plaintiff's research, products, plans, drawings, sketches, designs, photos, know-how, customer contact information, and pricing information.  (*Id.* at ¶ 24.)

Defendants acted as an authorized distributor for Plaintiff for approximately four years.  (*Id.* at ¶ 25.)  Plaintiff noticed a decrease in Defendants' calls, sales, and client requests in September 2022, which led Plaintiff to believe Defendants were removing business from Plaintiff.  (*Id.* at ¶ 27.)  In June 2023, Defendants began selling, for their own benefit, products manufactured using confidential information Halverson learned from the onsite training.  (*Id.* at ¶¶ 23–31.)  Specifically, Plaintiff alleges Defendants used trade secrets to replicate: (1) spray

---

[1]     The following recitation of facts is taken, sometimes verbatim, from allegations in the First Amended Complaint.  (ECF No. 15.)

1   booth fronts designed to be an image of the client's shop; and (2) exhaust plenums with

2   centralized airflow.  (*Id.* at ¶¶ 29–30.)

3        Plaintiff commenced the instant action in San Joaquin Superior Court on July 17, 2023.

4   (ECF No. 1 at 7.)  Defendants removed the case on July 20, 2023, based on diversity jurisdiction.

5   (*Id.* at 2.)  Plaintiff filed the operative First Amended Complaint ("FAC") on August 22, 2023,

6   alleging claims for: (1) misappropriation of trade secrets under the California Uniform Trade

7   Secrets Act, California Civil Code §§ 3426–3426.11; (2) unjust enrichment; (3) unfair business

8   practices; (4) breach of contract; and (5) breach of the implied covenant of good faith and fair

9   dealing.  (ECF No. 15.)

10        Defendants filed the instant motion to dismiss on September 5, 2023.  (ECF No. 17.)

11   Defendants' motion is brought under Federal Rule of Civil Procedure ("Rule") 12(b)(2) for lack

12   of personal jurisdiction, Rule 12(b)(3) for improper venue, and Rule 12(b)(6) for failure to state a

13   claim.  (ECF No. 18.)  The Court will address each basis for dismissal in turn.

14        **II.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

15              A.    Standard of Law

16        Rule 12(b)(2) allows a party to file a motion to dismiss for lack of personal jurisdiction.

17   Plaintiff has the burden of establishing that the Court has personal jurisdiction over Defendant.  *In*

18   *re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013), *aff'd sub*

19   *nom.*, *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015).  Where the Court does not hold an

20   evidentiary hearing and the motion is based on the written materials, Plaintiff need only establish

21   a *prima facie* showing of personal jurisdiction.  *Schwarzenegger v. Fred Martin Motor Co.*, 374

22   F.3d 797, 800 (9th Cir. 2004).  In such a case, "[u]ncontroverted allegations in the complaint must

23   be taken as true" and "[c]onflicts between parties over statements contained in affidavits must be

24   resolved in the plaintiff's favor."  *Id.*

25        If there is no applicable federal statute governing personal jurisdiction, the Court applies

26   the law of the state in which it sits.  *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608–09

27   (9th Cir. 2010).  "California's long-arm jurisdiction statute is coextensive with federal due

28   process requirements."  *Id.*  Due process requires that for nonresident defendants to be subject to

1   the Court's jurisdiction, defendants "have certain minimum contacts with [the forum state] such

2   that the maintenance of the suit does not offend traditional notions of fair play and substantial

3   justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

4        The strength of contacts required depends on which of the two categories of personal

5   jurisdiction a litigant invokes: general jurisdiction or specific jurisdiction.  A court may assert

6   general personal jurisdiction over corporations "when their affiliations with the State are so

7   'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*

8   *Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A corporation will primarily

9   be "at home" for the purposes of general jurisdiction in two paradigmatic forums: its place of

10  incorporation and its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137

11  (2014).  General jurisdiction is not limited to these two forums but will only be available

12  elsewhere in the "exceptional case" where a corporation's affiliations with a forum are "so

13  substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139; *see*

14  *also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

15       Specific jurisdiction is satisfied when the defendant's activities are directed toward the

16  forum state and the defendant's liability arises out of or relates to those activities. *Daimler*, 571

17  U.S. at 127.  In the Ninth Circuit, courts employ a three-part test to determine whether a

18  defendant's contacts suffice to establish specific jurisdiction: "(1) the nonresident defendant must

19  have purposefully availed himself of the privilege of conducting activities in the forum by some

20  affirmative act or conduct; (2) plaintiff's claim must arise out of or result from the defendant's

21  forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Roth v. Garcia*

22  *Marquez*, 942 F.2d 617, 620–21 (9th Cir. 1991) (emphasis omitted).  Plaintiff bears the burden of

23  satisfying the first two prongs, and if they are met, the burden shifts to Defendant "to set forth a

24  'compelling case' that the exercise of jurisdiction would not be reasonable." *Mavrix Photo*, 647

25  F.3d at 1228.

26  ///

27  ///

28  ///

4

1     B.     Analysis

2          Defendants argue the Court lacks general and specific personal jurisdiction over them.

3     (ECF No. 18 at 10.)  In opposition, Plaintiff argues only that the Court has specific jurisdiction

4     over Defendants.  (ECF No. 22 at 11.)  Based on the record before the Court and absent argument

5     to the contrary, the Court finds that it does not have general jurisdiction over Defendants, as it is

6     undisputed that both Defendants reside in Wisconsin.  (ECF No. 15 at ¶¶ 2, 3; ECF No. 18 at 14.)

7     However, for the reasons discussed below, the Court concludes Plaintiff has established specific

8     jurisdiction.

9          "Under the first prong of [the] three-part specific jurisdiction test, [the plaintiff] must

10    establish that [the defendant] either purposefully availed itself of the privilege of conducting

11    activities in California, or purposefully directed its activities toward California."  *Schwarzenegger*

12    *v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  "A purposeful availment analysis

13    is most often used in suits sounding in contract," while "[a] purposeful direction analysis . . . is

14    most often used in suits sounding in tort."  *Id.*; *see also Davis v. Cranfield Aerospace Solutions,*

15    *Limited*, 71 F.4th 1154, 1162 (9th Cir. 2023) (explaining there is no "hard-and-fast rule" and the

16    first prong "may be satisfied by purposeful availment," "by purposeful direction," or "by some

17    combination thereof").

18         Defendants argue Plaintiff cannot establish specific jurisdiction under either analysis.

19    (ECF No. 18 at 12–16.)  In opposition, Plaintiff relies only on purposeful availment.  (ECF No.

20    22 at 12.)  Although Plaintiff alleges claims that sound in both tort and contract, it may establish

21    jurisdiction for all claims under either analysis because all the claims involve the same common

22    nucleus of operative facts.  *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) ("If personal

23    jurisdiction exists over one claim, but not others, the district court may exercise pendent personal

24    jurisdiction over any remaining claims that arise out of the same 'common nucleus of operative

25    facts' as the claim for which jurisdiction exists.").  As will be discussed, the Court concludes

26    Plaintiff has established purposeful availment for the purposes of exercising jurisdiction over

27    Defendants for the contract-related claims.  Therefore, the Court only addresses purposeful

28    availment herein and exercises pendent jurisdiction over Plaintiff's tort claims.

5

Under the purposeful availment analysis, entering a contract with a California company is not sufficient on its own to establish minimum contacts with California. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, the Court considers "actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* at 475. Merely "random, fortuitous, or attenuated" contacts are not sufficient. *Id.* "The purposeful availment prong is satisfied when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents." *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986). In determining whether such contacts exist, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479.

Plaintiff argues Defendants' "entire course of dealing" shows they availed themselves to the benefits, law, and protections of California. (ECF No. 22 at 12.) More specifically, Plaintiff argues personal jurisdiction is established because: (1) Halverson attended a three-day training on Plaintiff's product in California; (2) Halverson entered into an agreement in California to become an authorized distributor of the product; and (3) Defendants maintained a website to sell Plaintiff's spray booths throughout the nation, including in California. (*Id.* at 12–14.)

Defendants argue Halverson's three-day training in California was not meaningful enough to create a substantial connection with California. (ECF No. 18 at 15–16.) Defendants cite *Picot* to support this argument. (*Id.*) In *Picot*, the defendant, a Michigan resident, contracted with a plaintiff from California. 780 F.3d at 1209. The parties negotiated a contract in Michigan wherein the defendant would develop hydrogen technology for future sale. *Id.* The defendant performed most of his work in Michigan. *Id.* The defendant's only contacts with California were two trips he made to the state to assist with demonstrations of the product to prospective buyers at the plaintiff's request and expense. *Id.* at 1210. Although both trips lasted approximately two weeks, the defendant's role in the demonstrations was "relatively small." *Id.* at 1213. The Ninth Circuit concluded the two trips to California were insufficient to establish personal jurisdiction in California. *Id.*

///

1    The instant case is distinguishable from *Picot*.  Unlike the defendant's trips to California

2  in *Picot*, which were only incidental to the contract that had been entered into and largely

3  performed in Michigan, Halverson's three-day trip to California in 2019 is of central importance

4  to Plaintiff's claims.  While in California, Halverson allegedly entered into an agreement to

5  become an authorized distributor for Plaintiff and underwent onsite training to learn about

6  Plaintiff's products.  (ECF No. 15 at 5.)  Plaintiff alleges Defendants distributed for Plaintiff until

7  2023, when Defendants breached the agreement by misappropriating Plaintiff's trade secrets

8  based on confidential information learned from the training.  (*Id.* at 3–6.)

9    Defendants argue there was no contract and Plaintiff failed to allege any details about the

10  purported contract between the parties.  (ECF No. 18 at 16.)  Plaintiff seems to concede there was

11  no written contract and argues instead that the parties operated under an oral or implied

12  agreement.  (ECF No. 22 at 20.)  The FAC alleges in relevant part,

13
> The terms of that agreement on September 20, 2019, in Tracy
14
> California were that Defendants would obtain the exclusive right to
> sell and distribute RGI's PRODUCTS in certain areas and
> Defendants were to use their best efforts to promote the sale and
15
> distribution of the PRODUCTS.  In exchange for the exclusive right
> to sell and distribute RGI's PRODUCTS in a certain area,
16
> Defendants agreed that RGI would be the only brand of products
> Defendants would sell and would avoid any multiline brand sales of
17
> similar products.  The parties also agreed that Defendants would keep
> confidential the details and information related to Plaintiff's design,
18
> drawings and other proprietary information.

19  (ECF No. 15 at 5.)  While Defendants are correct that the FAC does not include allegations that

20  Defendants agreed to promote and sell Plaintiff's products in California, Defendants fail to

21  persuade the Court that such a contract term is necessary to confer personal jurisdiction.  *See*

22  *Creative Realty Partners, Inc. v. Michaelson Real Est. Grp., LLC*, No. 220CV03693MWFMRW,

23  2022 WL 16935330, at *10 (C.D. Cal. Sept. 13, 2022) (stating that while "the absence of in-

24  forum contract obligations weighs against a finding of jurisdiction," it is not dispositive).

25    The Court concludes the alleged agreement and training that took place in California is

26  sufficient to satisfy purposeful availment.  *See Sustainable Ranching Partners, Inc. v. Bering Pac.*

27  *Ranches Ltd.*, No. CV 17-02323-JST, 2017 WL 4805576, at *6 (N.D. Cal. Oct. 24, 2017) (finding

28  Defendants purposefully availed themselves of California because it was "undisputed that

[Defendant] did visit [Plaintiff] in California prior to the execution of the agreement for the purposes of discussing that agreement"); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1329, 1331 (9th Cir. 1984) (finding purposeful availment in part because of defendant's visits to the forum to discuss various agreements).

Defendants do not raise any arguments in their motion regarding the remaining prongs of the specific jurisdiction analysis — whether Plaintiff's claims relate to Defendants' forum-related activities and whether exercising jurisdiction would be unreasonable.  (*See generally* ECF No. 18.)  In the absence of any argument from Defendants and based on the existing record, the Court concludes these final two prongs support the exercise of jurisdiction.

Accordingly, the Court DENIES Defendants' motion to dismiss based on lack of personal jurisdiction.

### III.   MOTION TO DISMISS FOR IMPROPER VENUE

#### A.   Standard of Law

A party may move to dismiss an action based on improper venue pursuant to Rule 12(b)(3).  Fed. R. Civ. P. 12(b)(3).  Once a defendant challenges venue, the plaintiff bears the burden of demonstrating that the chosen venue is proper.  *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

Venue in a civil action is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3).

///

///

///

1          B.      Analysis

2          Defendants argue the Eastern District of California is an improper venue under each prong

3   of 28 U.S.C. § 1391(b) ("§ 1391(b)").  (ECF No. 18 at 17.)  Defendants argue: (1) § 1391(b)(1)

4   does not apply because none of Defendants reside in this district; (2) § 1391(b)(2) does not apply

5   because a substantial part of the events did not occur in this district; and (3) § 1391(b)(3) does not

6   apply because this Court does not have personal jurisdiction over Defendants.  (*Id.*)  In

7   opposition, Plaintiff argues venue is proper because its claims arose in Tracy, California, which is

8   in the Eastern District of California.  (ECF No. 22 at 15.)

9          The Court concludes that venue is proper because, as already discussed at length in the

10  context of personal jurisdiction, a substantial part of the events giving rise to Plaintiff's claims

11  occurred in this district.  Namely, Plaintiff alleges Defendants entered into an agreement and

12  misappropriated trade secrets while in Tracy, California.  (ECF No. 15 at 3–6.)

13         Therefore, the Court DENIES Defendants' motion to dismiss based on improper venue.

14         **IV.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

15                 A.      Standard of Law

16         A motion to dismiss for failure to state a claim upon which relief can be granted under

17  Rule 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th

18  Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and plain statement of the claim

19  showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556

20  U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the complaint must "give the

21  defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic*

22  *v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).  "This simplified

23  notice pleading standard relies on liberal discovery rules and summary judgment motions to

24  define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz v. Sorema*

25  *N.A.*, 534 U.S. 506, 512 (2002).

26         On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

27  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

28  reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

9

1    *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

2    "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

3    relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

4            Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

5    factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

6    While Rule 8(a) does not require detailed factual allegations, "it demands more than an

7    unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A

8    pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

9    elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

10   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

11   statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences

12   are insufficient to defeat a motion to dismiss" for failure to state a claim.  *Adams v. Johnson*, 355

13   F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the

14   plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws

15   in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State*

16   *Council of Carpenters*, 459 U.S. 519, 526 (1983).

17           Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

18   facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim

19   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

20   reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

21   680.  While the plausibility requirement is not akin to a probability requirement, it demands more

22   than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

23   inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

24   experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

25   her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

26   dismissed.  *Id.* at 680 (internal quotations omitted).

27           In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

28   thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

1    *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

2    *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-*

3    *Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true

4    allegations that contradict matters properly subject to judicial notice).

5         If a complaint fails to state a plausible claim, "[a] district court should grant leave to

6    amend even if no request to amend the pleading was made, unless it determines that the pleading

7    could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130

8    (9th Cir. 2000) (en banc) (citation and internal quotation marks omitted).

9               B.    <u>Analysis</u>

10        Defendants argue there are insufficient facts alleged as to each of Plaintiff's five claims.

11    (ECF No. 18 at 17.)  The Court will address Plaintiff's claims in turn.

12               *i.  Trade Secret Misappropriation*

13        Plaintiff's first claim alleges a violation of the California Uniform Trade Secrets Act

14    ("CUTSA").  (ECF No. 15 at 7.)  CUTSA is codified at California Civil Code §§ 3426–3426.11

15    and "creates a statutory cause of action for the misappropriation of a trade secret."  *Brescia v.*

16    *Angelin*, 172 Cal. App. 4th 133, 143 (2009).  A prima facie claim for trade secret

17    misappropriation under CUTSA requires the plaintiff to allege: "(1) the plaintiff owned a trade

18    secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions

19    damaged the plaintiff."  *Mastronardi Int'l Ltd. v. SunSelect Produce (California), Inc.*, No. 1:18-

20    cv-00737-AWI-JLT, 2019 WL 3996608, at *9 (E.D. Cal. Aug. 23, 2019) (citation omitted).

21    "Trade secret" is defined as:

22             information, including a formula, pattern, compilation, program,

23             device, method, technique, or process, that: (1) derives independent
                  economic value, actual or potential, from not being generally known

24             to the public or to other persons who can obtain economic value from
                  its disclosure or use; and (2) is the subject of efforts that are

25             reasonable under the circumstances to maintain its secrecy.

26    Cal. Civ. Code § 3426.1(d).

27    ///

28    ///

Defendant makes two main arguments for dismissal of this claim, both of which are unpersuasive.  First, Defendants argue Plaintiff fails to "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."  (ECF No. 18 at 18–19 (citing *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (quoting *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989))).)

Defendants cite cases that were decided at the summary judgment stage, not on a Rule 12(b)(6) motion.  At the pleading stage, the Court finds Plaintiff alleges its trade secrets with sufficient particularity such that Defendants can "ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citations omitted); *see also Autodesk, Inc. v. ZWCAD Software Co.*, 5:14–cv–01409–EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015) ("[A] plaintiff need not 'spell out the details of the trade secret.'").  Indeed, Plaintiff identifies the subject matter of the trade secrets in the FAC as follows:

> Without disclosing the intrigue details of RGI's trade secret, Plaintiff's PRODUCTS are unique as compared to the competitors because RGI sells many of its PRODUCTS on an image basis, so RGI designs the front of its spray booths to be an image or representation of the client's shop. This front is the signature piece design for RGI unlike any other spray booth in the market.
>
> RGI's trade secret also involves the exhaust plenums that has centralized airflow and its uniqueness gives RGI an economic and logistical advantage over its competitors.
>
> These two items are the main signature designs (trade secrets) that Defendants replicated from RGI's PRODUCTS, and which would require access to RGI's confidential information to replicate and fabricate.

(ECF No. 15 at 6–7.)

Defendants contend these spray booth features are not protectable trade secrets because they are visible to the public.  (ECF No. 18 at 19.)  Defendants rely on *Morton v. Rank Am. Inc.*, 812 F. Supp. 1062, 1073 (C.D. Cal. 1993).  (*Id.*)  However, *Morton* does not support Defendants' argument.  Like Defendants in the instant case, the defendants in *Morton* moved to dismiss a misappropriation of trade secrets claims because the alleged trade secrets, including decor,

1   fixtures, and menu prices in a restaurant, might be generally observable to the public.  812 F.

2   Supp. at 1073.  The *Morton* court rejected the defendant's argument and denied the motion to

3   dismiss, stating the plaintiffs "cited to facts that could be inaccessible to the general public." *Id.*

4          As Plaintiff correctly points out, it is unclear from the FAC whether the spray booth

5   designs at issue are accessible to public.  To the extent Defendants are making arguments beyond

6   the allegations in the FAC, such arguments are inappropriate at the pleading stage.  In addition,

7   the Court finds Plaintiff has alleged the information related to these designs is not accessible to

8   the public.  For example, Plaintiff alleges Defendants only learned of the confidential information

9   related to the designs because they entered an agreement to become an authorized distributor and

10  Halverson attended in-depth training on Plaintiff's products.  (ECF No. 15 at 5–6.)  Therefore, the

11  Court rejects Defendants' first argument and finds Plaintiff sufficiently alleges the trade secrets at

12  issue.  *See Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003)

13  (explaining that because "a trade secret is one of the most elusive and difficult concepts in the law

14  to define . . .  the question of whether certain information constitutes a trade secret ordinarily is

15  best resolved by a fact finder after full presentation of evidence from each side.").

16          Second, Defendants argue Plaintiff fails to plausibly allege it took "reasonable measures"

17  to ensure the secrecy of its trade secrets because Plaintiff did not require employees or agents to

18  sign non-disclosure or confidentiality agreements.  (ECF No. 18 at 20–21.)

19          Defendants are correct that courts have found allegations regarding non-disclosure and

20  confidentiality agreements sufficient to state a claim.  *See, e.g.*, *Kittrich Corp. v. Chilewich*

21  *Sultan, LLC*, No. 12-10079-GHK (ARGx), 2013 WL 12131376, at *5 (C.D. Cal. Feb. 20, 2013).

22  However, Defendants fail to persuade the Court that such allegations are necessary to survive a

23  motion to dismiss.  In any event, the FAC does allege the steps Plaintiff took to keep its alleged

24  trade secrets confidential.  The FAC alleges in relevant part,

25          RGI took careful measures to maintain the secrecy of its
            PRODUCTS, allowing only authorized agents to access this
26          confidential information. RGI did not publish its trade secrets
            anywhere and did not allow access to this information unless the
27          individual or company was an authorized agent/distributor. RGI's
            PRODUCTS are valuable because their design and drawings are
28          unknown to others and RGI has continued to keep them secret.

                                              13

1   (ECF No. 15 at ¶ 36.)

2   Defendants would have this Court declare that such allegations are insufficient as a matter

3   of law.  The Court declines to do so.  There are questions of fact as to whether the information at

4   issue constitutes trade secrets and whether Plaintiff took reasonable measures to keep that

5   information confidential.  Defendants' arguments involve questions of fact that "should be

6   answered with evidence at the summary judgment or trial phase, not now." *Mastronardi Int'l*

7   *Ltd.*, 2019 WL 3996608, at *9 (citing *Taoglas Grp. Holdings Ltd. v. 2J Antennas USA, Corp.*,

8   2019 WL 1239302, at *6 (S.D. Cal. Mar. 18, 2019) ("Whether these measures are reasonable

9   under the circumstances cannot be decided at the pleading stage."); *Auto. Data Sols., Inc. v.*

10  *Directed Elecs. Canada, Inc.*, 2018 WL 4742288, at *5 (C.D. Cal. July 16, 2018) ("Whether a

11  trade secret owner has taken reasonable efforts to maintain secrecy is a question of fact.")).

12  Accordingly, the Court DENIES Defendants' motion to dismiss the misappropriation of

13  trade secrets claim.

14  *ii.   Unjust Enrichment*

15  Plaintiff's second claim alleges unjust enrichment.  (ECF No. 15 at 8.)  "To allege unjust

16  enrichment as an independent cause of action, a plaintiff must show that the defendant received

17  and unjustly retained a benefit at the plaintiff's expense." *ESG Capital Partners, LP v. Stratos*,

18  828 F.3d 1023, 1038 (9th Cir. 2016).

19  Defendants argue Plaintiff fails to allege Defendants unjustly retained a benefit at

20  Plaintiff's expense.  (ECF No. 18 at 21–22.)  In opposition, Plaintiff argues it sufficiently alleged:

21  (1) Plaintiff provided Defendants the benefit of selling its products for which Defendants received

22  a portion of the return and access to RGI's client base; and (2) Defendants unjustly and

23  wrongfully retained those benefits by wrongfully retaining proceeds that were intended to benefit

24  Plaintiff and by failing to publicly announce that Defendants were no longer unauthorized RGI

25  distributors as Defendants sold their "knock-off" spray booths.  (ECF No. 22 at 18 (citing ECF

26  No. 15 at ¶¶ 43–46, 49–50).)

27  Defendants' argument lacks authority or analysis.  In the absence of a clear, well-

28  supported argument from Defendants, the Court cannot say that Plaintiff fails to allege a plausible

14

claim.  *See Deutsch v. Cook*, No. 1:19-CV-00281-DAD-SAB, 2021 WL 5771667, at *5 (E.D.

Cal. Dec. 6, 2021) (denying a motion to dismiss an unjust enrichment claim when plaintiff

"alleged facts demonstrating that he expected defendant would compensate him in some form or

manner").

Thus, the Court DENIES Defendants' motion to dismiss the unjust enrichment claim.

### iii.   *Unfair Business Practices*

Plaintiff's third claim alleges a violation of California's Unfair Competition Law

("UCL"), codified at California Business & Professions Code § 17200.  (ECF No. 15 at 10.)  The

UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive,

untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  "[A]n act can be alleged to

violate any or all three of the prongs of the UCL — unlawful, unfair, or fraudulent."  *Stearns v.*

*Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1149 (N.D. Cal. 2010) (quoting *Berryman v.*

*Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007)).

The FAC is unclear as to which prong is at issue in this case.  Defendants argue Plaintiff

fails to allege a claim under any of the three prongs.  (ECF No. 18 at 22–24.)  In opposition,

Plaintiff seems to argue that its UCL claim is based only on Defendants' "unfair" business

practices.  (ECF No. 22 at 19.)  Defendants argue Plaintiff has not stated a claim under the

"unfair" prong because that prong targets violations related to antitrust law.  (ECF No. 18 at 23.)

Defendants are correct that in order for Plaintiff to have suffered an injury for purposes of

a UCL violation due to Defendants' "unfair" conduct, Defendants' conduct must threaten "an

incipient violation of an antitrust law, or violate[ ] the policy or spirit of one of those laws

because its effects are comparable to or the same as a violation of the law, or otherwise

significantly threaten[ ] or harm[ ] competition."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel.*

*Co.*, 20 Cal. 4th 163, 187 (1999).  Importantly, "[i]njury to a competitor is not equivalent to injury

to competition; only the latter is the proper focus of antitrust laws."  *Id.* at 186.

Plaintiff argues it alleges Defendants misrepresented to consumers that they remained an

authorized distributor so they could sell "knock-off" booths.  (ECF No. 22 at 19 (citing ECF No.

15 at ¶¶ 49–50).)  Plaintiff argues the FAC further alleges "Defendants' improper actions were a

15

1  practice and pattern of deceit undertaken while and after Defendants were authorized RGI

2  distributors." (*Id.* (citing ECF No. 15 at ¶ 51).)  Plaintiff makes no effort to explain how those

3  allegations support a claim that Defendants' conduct threatened "an incipient violation of an

4  antitrust law, or violate[d] the policy or spirit of one of those laws because its effects are

5  comparable to or the same as a violation of the law, or otherwise significantly threaten[ed] or

6  harm[ed] competition." *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 187.  To the contrary, it appears

7  Plaintiff only alleges harm to its own commercial interests.  *See Watson Labs., Inc. v. Rhone–*

8  *Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1117 (C.D. Cal. 2001) (finding the plaintiff could not

9  prevail under the "unfair" prong of the UCL where the evidence merely indicated harm to its

10  commercial interests rather than harm to competition).  Absent further argument or clarity from

11  Plaintiff as to the theory of liability and facts that support its UCL claim, the Court concludes

12  Plaintiff fails to state a claim.

13      Accordingly, the Court GRANTS Defendants' motion to dismiss the UCL claim.  Because

14  this is the first time the Court has addressed the deficiencies in this claim, the Court will give

15  Plaintiff an opportunity to amend.

16                    *iv.  Breach of Contract*

17      Plaintiff's fourth claim is for breach of contract.  (ECF No. 15 at 10–11.)  To prevail on a

18  breach of contract claim, Plaintiff must allege: (1) the existence of a contract; (2) Plaintiff's

19  performance of the contract; (3) Defendants' breach of the contract; and (4) the resulting damage

20  to Plaintiff.  *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1387 (2010).

21      Defendants argue Plaintiff fails to allege the existence of a contract.  (ECF No. 18 at 25.)

22  In a footnote, Defendants also argue, without including any analysis or authority, that Plaintiff

23  fails to allege the terms of the agreement or what Defendants did to breach the agreement.  (*Id.*)

24      The Court concludes Plaintiff has adequately alleged the existence and terms of the

25  contract.  "Federal procedural rules do not require a plaintiff to attach the contract or recite its

26  terms verbatim in order to allege the contract's existence." *Land O'Lakes, Inc. v. Dairyamerica,*

27  *Inc.*, No. 1:15-CV-01937-DAD-MJS, 2017 WL 495644, at *6 (E.D. Cal. Feb. 6, 2017).  Plaintiff

28  has alleged the substance of the agreement between the parties as follows:

1
2
3
4
5

> On or about September 20, 2019, in Tracy, California, Defendants agreed to serve as distributors of RGI's PRODUCTS, having exclusive rights to sell and distribute RGI's PRODUCTS in certain areas. Defendants also agreed to use their best efforts to promote the sale and distribution of RGI's PRODUCTS and to sell only RGI brand products and avoid any multi-line brand sales of similar products. Defendants also agreed to keep RGI PRODUCTS confidential.

6   (ECF No. 15 at ¶ 55.)  To the extent that defendants dispute the truth of plaintiff's allegations,

7   such factual disputes are not suitable for resolution at this stage of the litigation.  *See Kaiser v.*

8   *Blue Cross of Cal.*, 347 F.3d 1107, 1111 (9th Cir. 2003) ("A motion to dismiss should not be

9   granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

10  claim that would entitle him to relief.").

11          The Court also concludes Plaintiff adequately alleged breach.  Plaintiff alleges Defendants

12  breached the contract "by improperly using and sharing confidential and proprietary information,

13  failing to use its best efforts to promote the sale and distribution of RGI's PRODUCTS, failing to

14  sell only RGI brand products and avoiding any multi-line brand sales of similar products."  (*Id.* at

15  ¶ 56.)  These allegations give defendant "fair notice of the basis" of Plaintiff's claim and are thus

16  sufficient to support a cognizable breach of contract action.  *Rivera v. Peri & Sons Farms, Inc.*,

17  735 F.3d 892, 899–900 (9th Cir. 2013).

18          For these reasons, the Court DENIES Defendants' motion to dismiss the breach of

19  contract claim.

20                          *v.   Breach of Implied Duty of Good Faith and Fair Dealing*

21          Plaintiff's fifth claim is for breach of the implied duty of good faith and fair dealing.

22  (ECF No. 15 at 11.)  Defendants argue that because Plaintiff fails to allege the existence of a

23  contract, Plaintiff also fails to state a claim for breach of the implied duty of good faith and fair

24  dealing.  (ECF No. 18 at 25.)  In other words, Defendants' argument as to this claim is entirely

25  derivative of its argument as to the breach of contract claim.  Because the Court has found

26  Plaintiff plausibly alleged a breach of contract claim, the Court rejects Defendants' derivative

27  argument as to this claim.

28  ///

17

Therefore, the Court DENIES Defendants' motion to dismiss the breach of the implied duty of good faith and fair dealing claim.

**V.     CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss with leave to amend.  (ECF No. 17).  Plaintiff may file an amended complaint to cure the deficiencies with the UCL claim (Claim Three) not later than thirty (30) days from the electronic filing date of this Order.  Defendants shall file a responsive pleading not later than twenty-one (21) days from the filing of the amended complaint.  If Plaintiff opts not to file an amended complaint, this case will proceed on the remaining claims in the FAC (Claims One, Two, Four, and Five), and Defendants shall file an answer not later than twenty-one (21) days from Plaintiff's deadline for filing an amended complaint.

IT IS SO ORDERED.

Date:  May 24, 2024

Troy L. Nunley
United States District Judge

18